**Henri GONDRE as Trustee for Le Revenu Immobilier, S.C.I., Plaintiff,**

v.

**Patrick SILBERSTEIN a/k/a Patrick Silverstein, Defendant.**

**No. 88–CV–0997.**

United States District Court, E.D. New York.

Aug. 21, 1990.

Richard K. Bernstein, Richard K. Bernstein Associates, New York City, for plaintiff.

Claude Henry Kleefield, Law Offices of Claude Henry Kleefield, New York City, for defendant.

KORMAN, District Judge.

On October 31, 1979, following the defendant's failure to appear personally before a French court to face criminal charges of fraud and breach of trust perpetrated upon the public, the Tribunal de Grande Instance de Paris (Court of First Instance of Paris and hereinafter the "French Court") held the defendant in default and entered a judgment of guilty against him. The French Court sentenced the defendant to five years imprisonment and ordered him to pay civil damages of $2,235,178.50 to Le Revenu Immobilier.[1] Under the laws of France, a victim of criminal activity may

---

1. The defendant here was only one of several defendants ordered by the French Court to pay twelve million two hundred and nineteen thousand francs (FFr 12,219,000.00) to Le Revenu Immobilier as restitution and damages. The liability imposed was, however, joint and several.

file a civil action for money damages against the criminal defendant. The civil action is joined with the criminal case and both are ruled upon in the same decision. *See* Affidavit in Support of Plaintiff's Motion for Summary Judgment ¶ 5. Le Revenu Immobilier was one of several parties who joined in the action by filing such a civil suit at the time of the original proceeding in France. *See* Judgments of the French Court, October 31, 1979, and October 8, 1986.

On September 14, 1984, the defendant filed an "opposition" to the entry of the default judgment, pursuant to Article 489, paragraph 1 of the French Code of Criminal Procedure.[2] Article 489(1) provides that "[t]he Judgment by Default becomes void in all its provisions if the accused submits an opposition to its execution." *See* Legal Consultation of Raymond Illouz at 2. Under French law, however, such an "opposition" to a default judgment will be entertained only if the objector first submits to execution of the arrest warrant issued against him.[3] When the "opposition" was heard on September 26, 1986, the defendant failed to appear to submit to execution of the arrest warrant issued against him on October 31, 1979. On October 8, 1986, his "opposition" was, therefore, declared "inadmissible, null and void" and the French Court ordered that the original default judgment was to take full and complete effect ("reiterated judgment").

On April 1, 1988, the plaintiff, as trustee for Le Revenu Immobilier, commenced an action to enforce the reiterated judgment awarded by the French Court and on January 18, 1989, he moved for summary judgment. The defendant opposed the motion on the ground that the judgment is not enforceable because he did not receive fair notice of the proceedings in the French Court. In a Memorandum and Order dated November 21, 1989, the plaintiff's motion for summary judgment was denied. The plaintiff then moved for reargument and his request was granted. Upon reargument, the Memorandum and Order dated November 21, 1989, is withdrawn. The denial of the plaintiff's motion for summary judgment is, however, reaffirmed for the reasons that follow.

### Discussion

■ The Supreme Court has held that, "[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Tr. Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). Accordingly, New York law provides that "[a] foreign country judgment need not be recognized if ... the defendant in the proceedings in the foreign court did not receive notice of the proceedings in sufficient time to enable him to defend." N.Y.Civ.Prac.L. & R. § 5304(b)(2) (McKinney 1978).[4]

The record here indicates that the defendant did not receive any notice of the proceeding which resulted in the entry of the original default judgment. The plaintiff's arguments to the contrary are without merit. Specifically, the plaintiff argues that the defendant first received notice when he was interrogated by the French Police. The interrogation, however, dealt

---

**2.** The "opposition" was in the form of a letter to the Public Prosecutor from a lawyer retained by the defendant. The letter stated that the defendant "oppose[d] the judgment rendered by default." Supplemental Affidavit in Support of Motion for Summary Judgment, Exhibit B. The letter was described by the French Court in its judgment of October 8, 1986, as an "Opposition" pursuant to Article 489, paragraph 1 of the French Code of Criminal Procedure.

**3.** *See* Judgment of the French Court, October 8, 1986, at 3.

**4.** "Generally, the same standards that are applied to sister state judgments are applied to foreign judgments in respect of notice, although where questioned the notice given in a foreign proceeding may be subjected to closer scrutiny." Kulzer, *The Uniform Foreign Money-Judgments Recognition Act*, 13 N.Y.Jud.Conf.Rep. 194, 213 (1968), *reprinted in* 18 Buffalo L.Rev. 1, 30 (1969) (with minor editorial revision).

with a separate claim of false advertising, and not the crime of fraud and breach of trust for which he was tried in absentia. At the time of the interrogation, there were no charges pending against the defendant and there is no evidence that he was advised of the nature of the charges that would be filed against him. More significantly, there is no evidence that the defendant received notice when charges were filed against him. The only notice he received came after the entry of the default judgment.

The plaintiff argues, however, that the "opposition" the defendant filed to the entry of the default judgment constituted an appearance in the French Court and waived any defect arising out of the failure to give the defendant notice prior to judgment. This argument overlooks the fact that under Section 4 of the Uniform Foreign Money–Judgments Recognition Act, to which N.Y.Civ.Prac.L. & R. § 5304 corresponds, a judgment may be denied recognition even where the defendant appeared in the foreign proceeding:

> In contrast to the rule for domestic judgments, under which a defendant may be deemed to have waived defects in personal jurisdiction, of which insufficient notice is one, by a voluntary appearance, the [Uniform Foreign Money–Judgments] Act does not provide that an appearance mitigates the rule of this section. However, the second court is free to take this into account, along with such factors as the reasonableness of the method of notification and, presumably, such circumstances as the difficulty of the defense.

Kulzer, *The Uniform Foreign Money–Judgments Recognition Act, supra* note 4, at 213, 18 Buffalo L.Rev. at 30.

■ Moreover, even though an appearance by the defendant in the French Court would be a factor to be taken "into account" in determining whether to enforce the judgment at issue, the "opposition" filed by the defendant does not constitute a waiver of the failure to provide him notice "in sufficient time ... to defend." N.Y. Civ.Prac.L. & R. § 5304(b)(2) (McKinney 1978). The rule that an appearance precludes an attack on a subsequent judgment is premised on "the theory ... that by appearing in F[orum]–1 the defendant has a direct opportunity to raise and litigate the jurisdictional question." D. Siegel, *New York Practice* 632 (1978). Whether the "opposition" to the default judgment filed by the defendant constitutes an appearance in the French Court, the record shows that the "opposition" was rejected without consideration of any legal objections to the default judgment.

Specifically, under French law, if the judgment carries a period of incarceration in excess of two years, the defendant must appear personally and submit to the execution of the warrant that was issued together with the judgment to which he is objecting. The defendant's failure to do so results in the nullification of the "opposition" to the default judgment. Applying that rule, the French Court rejected the defendant's "opposition" on the ground that his failure to submit to the execution of the arrest warrant rendered his "opposition" "inadmissible, null and void." Judgment of the French Court, October 8, 1986, at 3. Under these circumstances, the defendant's unsuccessful "opposition" to the default judgment does not constitute a waiver of the claim that he did not receive adequate notice.

■ The plaintiff argues that, even though the "opposition" was rejected because of the defendant's failure to appear personally, enforcement of the judgment would not violate the Due Process Clause. Specifically, the plaintiff argues that the defendant could have had the default judgment set aside by personally appearing, just as he could have avoided the entry of the default if he had personally appeared after the action was commenced. This argument finds some support in the holding of the Supreme Court in *Armstrong v. Manzo*, 380 U.S. 545, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965). There it was suggested that, if a defendant could have had a default set aside as a matter of right after notice of its entry, he could not object to the failure of the plaintiff to afford him

adequate notice prior to the entry of the default. *Id.* at 551, 85 S.Ct. at 1191.

Under French law, the filing of an "opposition" renders the judgment by default "void in all its provisions" and the objector is restored to his original position. Had the defendant personally appeared in support of his "opposition," he would not have been faced with any burden beyond that which he would have faced at the proceeding that led to the original default judgment and he would have been restored "to the position he would have occupied had due process of law been accorded to him in the first place." [5] *Id.* at 552, 85 S.Ct. at 1191. Accordingly, the plaintiff argues "that whatever constitutional infirmity resulted from the failure to give the [defendant] notice had been cured." *Id.* at 551, 85 S.Ct. at 1191.

The defendant, however, argues that he did not receive notice of the hearing on the "opposition" at which it was rendered "null and void." This claim presents an additional issue under French law with further due process implications. Article 494 of the French Code of Criminal Procedure specifies two requirements for the entry of a reiterated judgment by default: (1) the person making the "opposition" must be informed of the hearing date either orally when the "opposition" is filed or by personal service, and (2) he must fail to appear on the hearing date. Under the statute, it is only *personal* service that suffices, actual notice is inadequate.[6] Accordingly, the entry of the reiterated judgment, without personal service on the defendant of notice of the hearing date for his "opposition," would have been improper.

The French law applicable at the time the reiterated judgment was entered, however, precluded the defendant from collaterally attacking the reiterated judgment in a French Court on this ground. The only way he could have challenged the reiterated judgment would have been to file an appeal within ten days of service of the

judgment upon the Attorney General of France (the first step in the service of the judgment through "diplomatic channels"). This ten-day rule is applicable without regard to whether the defendant was actually served with or notified of the entry of the reiterated judgment. Once ten days have passed, no further attack on the grounds of inadequate notice could be made in a French court.

The Supreme Court of France has since held that a defendant who has filed an opposition to a default judgment and failed to appear because he was not personally served, may challenge the reiterated judgment by filing an "opposition" (instead of an appeal) within ten days after being personally served with the reiterated judgment. By providing that the time within which a judgment can be challenged on lack of notice grounds does not begin to run until after personal service is made, and by providing that such a challenge may be made by a new "opposition" rather than an appeal, these modifications of French law ensure that a defendant will have an opportunity to be heard. A defendant who had a reiterated default judgment entered against him before the change in the law, however, cannot now avail himself of the protection afforded by this recent development. *See* Certificate of Daniel Stein, March 17, 1990.

Although the reiterated judgment at issue would not be subject to collateral attack in France, the manner in which it was rendered raises due process concerns and, therefore, it *may* be denied recognition here. Indeed, where the defect in notice offends traditional due process standards, "[t]he fact that the defendant was served in accordance with the foreign rules, or that the judgment is valid in the first state, will not necessarily save the judgment." Kulzer, *The Uniform Foreign Money–Judgments Recognition Act supra,* at 213, 18 Buffalo L.Rev., at 30. Moreover, al-

---

5. Although the defendant faced the burden of having to submit to the execution of the warrant for his arrest, he would have had to submit to the warrant in order to defend at the original (October 31, 1979) proceeding as well.

6. No suggestion has been made that the defendant was notified orally when the "opposition" by letter was filed.

though "[a] want of fair notice and time to defend in the foreign forum is made a [discretionary] ground for refusing recognition" under New York law, it is a fundamental of due process and nonrecognition is mandatory rather than discretionary. N.Y.Civ.Prac.L. & R. § 5304 (McKinney 1978) (Practice Commentaries by David D. Siegel at C5304:1). The ultimate question, therefore, "is whether a reasonable method of notification [was] employed and reasonable opportunity to be heard [was] afforded to the person affected." *Somportex Ltd. v. Philadelphia Chewing Gum Corp.*, 453 F.2d 435, 443 (3rd Cir.1971), *cert. denied*, 405 U.S. 1017, 92 S.Ct. 1294, 31 L.Ed.2d 479 (1972).

The plaintiff asserts that the defendant was served with notice of the hearing on his "opposition" through "diplomatic channels" and that this was a reasonable method of notification. The parties' submissions explain that this type of service is used for the service of court documents upon persons who do not reside in France, as required by Article 562 of the French Code of Criminal Procedure. The actual procedure, although not fully described by either party, appears to be as follows: the document is served upon the Attorney General of France (Procureur de la Republique), who forwards it to the Ministry of Foreign Affairs. The Ministry of Foreign Affairs then forwards the document to the United States Department of State, which in turn forwards it to the United States Department of Justice for service by the United States Marshals Service. Pursuant to the "Diplomatic Note of 1976," which

outlines the scope of judicial assistance that the United States will provide to foreign tribunals, the United States Marshals Service will, under certain prescribed conditions, serve foreign documents in the United States. Two copies of the document must be furnished to the Department of State; one to be served and the other to be returned by the Marshals Service with proof of service. If the document cannot be served after three attempts, it is returned with a written account of the dates, times and places that service was attempted. *See* Letter of Richard Bernstein, March 21, 1990; Affidavit of Claude Kleefield in Opposition to Motion for Summary Judgment, March 21, 1990.

What this discussion of service through "diplomatic channels" lacks is a description of the type of service that was actually made or attempted here and proof that such service was effected.[7] Instead, the plaintiff merely asserts that the defendant was served through diplomatic channels "in May 1986 ... concern[ing] a summons to appear in Court to plead his opposition," *see* Letter of Richard Bernstein, March 21, 1990, and he relies on the recitation in the reiterated judgment of the French Court that the defendant "was duly served with legal process ... through diplomatic channels."[8] The validity of that judgment, however, is itself in issue here and the ambiguous declaration that notice was effected through "diplomatic channels" is not sufficient to resolve the material issues of fact surrounding the precise method of service that was actually undertaken or effected.[9]

7. If service was made pursuant to the procedures outlined above, proof of service or an account of the unsuccessful attempts to serve would have been furnished by the United States Marshals Service.

8. The French Court, in its judgment of October 8, 1986, simply notes that service was made upon the defendant "through diplomatic channels" and that "no acknowledgment of service was received in return."

9. The plaintiff also argues that reasonable notice was provided because the defendant's French counsel "was aware of the date of the court hearing" and in fact appeared at the hearing. *See* Letters of Richard Bernstein, March

21, 1990, June 14, 1990 and July 2, 1990 and Letter of Danet Copper–Royer Burg, March 21, 1990. Whether the defendant's counsel was indeed informed of the date for the hearing on the "opposition," whether he advised his client accordingly and whether he in fact appeared at the hearing on the defendant's behalf are issues that remain unresolved by the parties' submissions. Moreover, the plaintiff's submission on these issues, consists primarily of an unsigned letter (the French copy of the letter has an illegible signature and the English translation provides no corresponding name) from the law firm of Mr. Guy Danet, (the plaintiff's counsel during the course of the proceedings in France) who, for reasons that are unclear, cannot sub-

■ While summary judgment must be denied for the foregoing reasons, the hybrid nature of the default judgment sought to be enforced here provides an additional basis for doing so at this stage of the proceedings. The civil actions that were filed in France as a result of the defendant's criminal activities were apparently consolidated with the criminal charges brought against him by the Public Prosecutor. The defendant did not receive any independent notice of the pendency of any of the separate civil actions that had been filed. Thus, the validity of the civil judgments would appear to hinge on the validity of the default judgment rendered in the underlying criminal case.

Under our law a defendant may be convicted in absentia only in certain very limited circumstances. Specifically, it is essential that the defendant have been "advised when proceedings were to commence and that he voluntarily, knowingly, and without justification failed to be present at the designated time and place before the trial may proceed in his absence. This assures that the defendant has been accorded an opportunity to be present at all critical stages of the trial ... and thereby affords him due process of law." *United States v. Tortora,* 464 F.2d 1202, 1209 (2nd Cir.), *cert. denied,* 409 U.S. 1063, 93 S.Ct. 554, 34 L.Ed.2d 516 (1972) (citations omitted). Where such notice is not provided, the judgment of conviction will be set aside. Indeed, our policy against foreign judgments of conviction rendered in absentia is illustrated by the practice we follow in cases where extradition is sought of defendants who have been tried and convicted in absentia. In such cases, extradition is granted only on the condition that the conviction be vacated and the defendant given a new trial. *See Ahmad v. Wigen,* 726 F.Supp. 389, 410 (E.D. N.Y.1989), *aff'd,* 910 F.2d 1063 (2nd Cir. 1990).

Moreover, even in a civil case where a defendant has received adequate notice of the proceedings, it is not entirely clear that a default judgment may be properly entered against him where he sought to have counsel appear and defend in his absence. Indeed, only recently, the California Court of Appeal (Second Appellate District) set aside a default judgment in a civil case where the defendant—who was a fugitive in a related criminal case—was not permitted to have counsel appear and defend in his absence. The Court of Appeal held that, "to strike [the defendant's] answer [filed by his counsel] and enter a default judgment against him based solely on, and as a punishment for, his fugitive status would violate the due process clause of the Fourteenth Amendment to the United States Constitution." *Doe v. Superior Court of Los Angeles County,* 222 Cal. App.3d 1406, 272 Cal.Rptr. 474 (2nd App. Dist.1990); *see Hovey v. Elliott,* 167 U.S. 409, 17 S.Ct. 841, 42 L.Ed. 215 (1897).

Because of the uncertainty surrounding the service that was actually effected and because these issues were not briefed by the parties, the difficult issue of what process is due in these circumstances is best left for resolution when the record is complete.

### Conclusion

■ The plaintiff's motion for summary judgment is denied because the plaintiff has not adequately demonstrated that the defendant was given the requisite notice. Indeed, in the face of the defendant's sworn affidavit denying that he received the notice that would be required in an ordinary civil case, the plaintiff's inability to demonstrate the existence of a material issue of fact regarding whether proper notice was received by the defendant, would be a ground for granting summary judgment in favor of the defendant even in the absence of a formal motion. *See* 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2720, at 29–35 (2d ed. 1983). This is especially true here because the original Memorandum and Order entered in this case put the plaintiff on notice of this possibility. *See* Memorandum and Order dated November 21, 1989.

mit an affidavit himself. This letter cannot serve as the basis for a summary judgment

motion in favor of the plaintiff on the issue of whether the defendant had reasonable notice.

Under the particular circumstances of this case, however, whether notice was effected and what form that notice took, may be facts that are within the exclusive control or knowledge of the defendant. Accordingly, the plaintiff should be afforded an opportunity to conduct discovery on these issues. *See* 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2741, at 545–551 (2d ed. 1983).

SO ORDERED.